of New Orleans and Judge Higginson, one of the rare sittings where the three Louisiana judges are seated. That doesn't help us to resolve the cases, but, you know, it's one of those oddities where we have three judges from Louisiana choosing to do it. Unfortunately, we don't have any Louisiana cases in the mix, so that's not going to really help us. But we've got four cases, you know, on for the day, and we'll play it by ear. In terms of between the second and third or third and fourth, we may take a short recess. We'll see how it goes. But other than that, we will call up the first case, United States v. Ferris. Mr. Bogan. May it please the Court, we'll have Bogan for Jonathan Ferris. We've raised three issues in the case, one of which is foreclosed. That's an issue that's been discussed. The other two issues go to the correctness of the district court's jury instructions and to the application of a cross-reference in the sentencing guidelines when the court was sentencing Mr. Ferris. And I'll address the jury instruction issue first. So Mr. Ferris was charged with committing an offense under 18 U.S.C. section 912, which makes it a crime to impersonate federal officers or employees. The factual underline for that was that he visited a pharmacy on three separate occasions to have prescriptions for fentanyl patches filled. And when he did that, he was presenting himself as an FBI officer, and that was the basis for the charge. So the issue in this case goes with one of the elements of that offense. So under section 912, it actually describes two separate offenses, both of which pertain to impersonating a federal officer. The second offense under the statute is impersonating an officer with intent to defraud and then either obtaining or demanding something of value from somebody else. And that seemed to sort of be the government's initial theory of the case, at least at the complaint stage. But ultimately, he was indicted under the first part of the statute, which requires the impersonation and intent to induce someone to do something they wouldn't otherwise do but for the impersonation. And this is the language of the statute. It requires the person to act as such with relation to the impersonation, and that's where the dispute is. The thing of value is what's normally charged, right? In other words, the thing of value is what the government usually charges. We've got pattern instructions across all the circuits. Right. But the act as such is a little rarer. Are you aware of any pattern instruction as opposed to case law interpreting? I don't know of any pattern instruction. And yes, the Fifth Circuit pattern instruction only has instructions for the of value. There's a note attached to the instruction. But you agree the counts tracked the statutory language, the counts themselves? The count in the complaint actually acts as such. Acts as such. Acts as such and obtains. So the only error and the only thing you're objecting to and raising before us is that the charge conference, and I want to ask you specifically, what objection did you preserve? That your requested instruction wasn't given? Or did you say there's a constructive amendment here, the language you're telling the jury has now broadened beyond what the grand jury charged? Which is it? A Nader violation or a constructive amendment? What did you object to and preserve for us? It was a Nader violation. It was not a constructive amendment. Okay. And that's what you're urging now? Yes. So you proposed an instruction in lieu of there being a pattern charge and that not having been given, then you specifically objected and preserved on the one that was given. Is that correct? Well, there was no corresponding instruction in lieu of the pattern. Okay. Well, I know there was no pattern I'm saying, but in the conferencing, you had a proposed charge. Is that correct? Right. So we submitted . . . Which the judge chose not to give. That's correct. Okay. Yes. We submitted a . . . we submitted proposed instructions. They were apparently submitted by email by the parties prior to the charge conference. And with respect to the acts as such element, we asked the court to instruct the jury that Mr. Farris committed an overact that asserted authority as a special agent of the Federal Bureau of Investigation. I mean, just cutting to the chase, you have plenty of time to address it. If that's not a correct statement of the law, either under Cohen or under the Seventh Circuit case the government points to, I don't think in reply you addressed, if acts with the asserted authority doesn't equal, then there wouldn't be reversible error even if the court broadened beyond the statutory language. Do you see my concern? I'm not sure I do. Okay. You asked for an instruction, an element that arguably is narrower than our Cohen decision, consistent with. So if the district court decides not to give it and your only objection is not giving it, would we reverse? Yes. And the government agrees on this point that the objection was adequately preserved. Oh, no. I agree it was preserved, but if you didn't give a substantially correct statement of law yourself, what's the authority that would say we reverse? Well. I know you're going to argue that is the element, right? That acting in conformance with the assumed character. But that's not what you said, an act, right? What was exactly what you requested? The exact request was that he asserted authority. Now, I will concede that that is, yes, that's something narrower than what the case law has defined, the acts as such element. Okay, but don't we stop right there with that honest acknowledgement by you? Because the district court, if you give them an instruction, but you admit that's not what the law requires, well, how do we reverse? You didn't say I want the Cohen instruction. I want consistent with. Well, we did submit a brief along with the proposed instructions, and in that brief, we do cite the Tullos decision from this court. It's unpublished, but it does refer to Randolph and Cohen, which defined the specific intent element and the acts as such element, which is an act consistent with the assumed character. And we actually quote Tullos there. I see. It's parenthetical. So I would say that the request for asserted authority was not the best articulation of the element. There is language to that effect in some of the cases. They're not saying that that is necessarily the standard, but they're talking about how that is evidence that someone did, in fact, satisfy the act as such authority. So I'm guessing, I'm not certain about this, but that's where the asserted authority comes from. But still, we put the district court on notice that any act, which is what the government requested, is not consistent with the statute, that something more is required. And this court has been clear about that. In the Bass decision from 1928 involving the predecessor version of the statute, the court was clear that merely falsely pretending to be an officer or employee of the United States with intent to defraud is not enough. You mean the boasting, just words? Pardon? Words. Boasting. Right. So just— But here, the government, in opening and in closing, and even your defense, no one was really disagreeing that there were the pin incident and the badge incident, and then he—right? No, there's no dispute as to the first element. No, I know, but beyond just words. This reserve cop fellow, he didn't just sort of boast. He comes in and he says, if you need help with the licensing board. That was after the second prescription was filled. Now, I'll admit this is strange behavior, all the more so because the prescriptions were valid, at least the first three of them. And that was a little bit obscured at trial. No, but that was your primary defense. He had no scienter because these were valid prescriptions. Right. But it wasn't that, hey, ladies and gentlemen of the jury, you can't convict him just because he walks into the pharmacy. Even though the government's now convinced the district court to say any act counts, that never really became the argument or the defense. That's what I'm getting at. Let's say the district court made instructional error. Is it harmless? That's what I'm asking you. Well, the thrust of our closing argument was that he didn't intend to induce the lawful because he had no reason to. Right. The prescriptions were valid, and in fact, the pharmacist had performed the necessary due diligence to verify that the prescriptions were valid, that they were medically appropriate, and so on. The harm comes from the fact that as the jury was instructed, it would allow them to find that if he had committed an offense the moment he walked out of his house, because at that point he would have been presenting himself as an FBI agent. If he had the required intent, and he did enact. He walked out of his house, and that's why the statute is written in the way that it is, is to distinguish between mere impersonation and . . . I don't disagree with you. I don't know why the thing of value wasn't charged. That's a government choice. The charge conference did seem to broaden the indictment, but my view is what you said to the district court was we want this, which went the wrong way the other way. I wouldn't say it was necessarily the wrong way. It was a subset. As you said, it was a narrower description of the acts as such element, which is an act in conformity with the assumed character. Again, he had no reason to do what he did because the prescriptions were valid. Also, at trial, the government prevented the defense from getting testimony from the pharmacist that Mr. Ferris does, in fact, suffer from a medical condition for which the prescription would be appropriate. The court said it's not relevant. Car crash didn't come in? I don't remember the car crash coming in. On one of the prescriptions, I think it was the pharmacist who added a handwritten note of what the diagnosis was, which I believe he obtained from the prescribing physician, which was trigeminal neuralgia, which is a condition that causes severe pain in the face area. It comes on as sudden shocks that are debilitating. That's why Ferris had been prescribed these patches, but according to the district court, that was irrelevant. So the jury didn't get— On the issue of the impropriety of excluding that evidence. We haven't raised that issue, but as to the harm analysis, it demonstrates the jury didn't get a full picture of what was going on. As the jury heard it, Ferris went into the pharmacy dressed as an FBI agent, talking about his activities as an FBI agent, and presented prescriptions that the pharmacist verified, and then Ferris left. There was also testimony about how the staff at the pharmacy didn't get Ferris to sign the logs that are required for dispensing of controlled substances. But overall, the harm here is that the jury was allowed to convict on any act rather than an act consistent with the assumed character, and this court's case law requires the second. And the prison time he got depended on the district court or us agreeing that the pharmacist became traffickers? Is that the theory? I don't know. So turning to the second issue, the pre-sentence report just applied the cross-reference without any real explanation. It just said under 2D1.1, here's what the base offense level would be. Do you preserve an objection? Yes. Yes. We objected to that, saying the cross-reference doesn't apply because there wasn't evidence that he had committed any offense. Is your client still in jail, or has this issue moved? No, he's in jail. He had his surrender date delayed, so he's now in prison. Just starting his term? Recently. I don't have his projected release date. This issue's not moved? No, it's not moved. If you win the enhancement, he drops to what? What's the range drop to? Zero to six. Zero to six instead of? Instead of, his range was 10 to 16. The court initially gave him 16, and then after an off-the-record conference at sentencing, the court gave him 12. So why the court gave him 12 is not known. Do we have to find there's clear error in the facts to support the cross-reference? Well, so here, parsing the standard of review, any underlying facts the court reviews for that is reviewed de novo. The cross-reference would apply if he's doing this in traffic. So, right, this court didn't misunderstand that. It's just, right, disagree with me. Right, if he was impersonating someone else and presented that person's prescriptions to the pharmacy, then, you know, the cross-reference might apply. Here, there's absolutely no evidence that the prescriptions were invalid, the testimony of trials, that the pharmacist verified that they were valid, that they were appropriate. I'm not sure, for instance, that he's the trafficker. Would it still apply if he's getting so much fentanyl, it's a fair inference, at least not clear error, that he must have been trafficking these fentanyl patches? Assuming that, so that question, I believe, would be a fact question. Right. Could that inference be wrong? Exactly. Right. I don't think there's enough evidence in the record to draw that inference because, again, the prescriptions were valid. He'd been prescribed these patches for years. Remember the only thing the district judge said at sentencing? The sort of, I sat through this trial. He seemed very confident about this. He did seem confident, but he also seemed to think that the evidence was that Ferris had been doing something nefarious in order to get these prescriptions. But there just, there wasn't evidence that he wasn't supposed to have these patches or that he was diverting them to some unauthorized use. There was a suggestion, I can't remember if it was at trial, I believe maybe at the preliminary and detention hearing, that Ferris was using the patches more frequently than maybe was appropriate. So I think . . . Miami, do you have a best case on us reversing a cross-reference, a 2D1 point, you know, trafficking? Do you have a best case about any circuit court? Probably clear upstander review and all those little questions. I don't know, I'm not sure if there is any case law in application of this particular cross-reference. It's not complex. I see what your argument is. We'll hear from the governor about that. Let me back you up to your subset argument. What's your best case? I mean, we understand what your position was and the charge. There's no pattern. It's subset. But help me understand what's your best case showing reversible error where what the judge gave is at least consistent with what the statute charged because you're not arguing constructive indictments. So what's your best case if this is reversible error rather than if error, harmless error? I can't give you a case, Your Honor. I don't remember . . . most of the case law in this area concerns the sufficiency of the indictment or challenges to the sufficiency of the evidence at trial. So I'm afraid I can't point the court to a case where this particular type of a charge in the act versus acts as such or an act in conformity to character is the basis for the question. I mean, I guess your bottom line is the government doesn't carry its burden to prove beyond a reasonable doubt. I'm just struggling with understanding the argument and the subset. But in the case I've looked at, just haven't found a case that says, well, this is reversible error as opposed to the charge you want might have been better, whatever, whatever. So is this race Nova for us? Oh, I believe so. There's not a whole lot of case law on this statute in general. I see my time has expired. Yeah, you can answer the question. One of the Seventh Circuit cases, I can't remember which one it was, did say what the charge was given to the jury and it was different from the one here. It was, make sure I get the language right. It was that while acting in such assumed or pretended character, the defendant committed any act. In the Second Circuit case, the instruction was any act in the assumed character. I think that's a critical difference there because it ties, that's consistent with an instruction the defendant acted consistent with the assumed character. Now, the propriety of that instruction wasn't an issue in the case but it is an illustration of how this could be charged correctly under the statute in the case law. Okay. I can see if I can pull up that case. All right. We'll take any help we can get. Any additional questions for the panel? You've reserved your rebuttal time. Thank you for your open. Okay. Thank you. All right. We'll hear from Mr. Durbin. Mr. Durbin, you're usually here as sort of the cleanup man on these tricky, tricky issues when we see you sitting over there. Things like they send you in on these. I'm glad you don't see it that way. I feel like they're just trying to squeeze the last bit of work out of this old horse if they can and they just keep sending me over. I don't know. I mean, that's just my observation. I'm not speaking for the panel but when I look over there and see you with the beard or not, I recognize you've been over there in this posture some . . . I've been here. . . . some time. All right. Help us out. Y'all were right on. What exactly was the problem in terms of the jury instruction? The statute, and this is where I start, the statute says whoever falsely assumes or pretends to be an officer acting under authority of the United States, that is an FBI agent, and acts as such. That's the operative language of the statute. And you charged them? That's the way the indictment charged them. In the conference, the district judge said, why didn't you charge thing of value? Well, I don't . . . That's irrelevant but . . . I don't really recall it and I don't really think this was about value. What I think was going on, Judge, is this was a . . . and I'm sort of extrapolating here because I read this . . . Well, you don't need to extrapolate. Well, I read this . . . Just legally, Emma, do you agree, counsel, that if there's a problem here, it's a constructive amendment? No. You don't agree? I don't. I don't believe it was . . . Well, but you charge . . . you charge acts as such. That's the statute. Yes. And you walk into charge . . . not you, the government. Yes. No, I understand. And you walk in there eager . . . Right. And it says, Judge, you know what? We'd just like any act while he was impersonated. That's broader. That is the boasting theory. How can opposing counsel not be right that at that point they could convict just because he opens the door? It's an act while impersonated. Well, I don't really see this huge difference between committed an act. The instruction to the jury was while acting in such assumed or pretended character, the defendant committed any act. Well, let's put a little emphasis on any. Any. And I understand. But I think a jury can probably figure out that if it's while acting in that character he commits any act, it's got to be connected to his acting in that character. It's possible. Well, if they charge the Cohen language consistent with, it would have the nexus. If they charge just the statutory, yes. But the government walks in and says, We want a little more. I don't know. Well . . . I know you can push back whatever they thought. To my eye, it broadened it. It allows the jury to convict on . . . But then my difficulty is that wasn't their objection. Instead, they wanted something a little bit more in their favor. That wasn't the objection. That wasn't the argument. And that wasn't, I don't think, what the proof was. So are we in nadir land? Is that the issue we're looking at? Maybe we're in harmless error. Okay. Maybe that's where we are. I mean, I think it could have been a better worded instruction, but I don't think . . . I mean, these 9-12 impersonation cases, they're frequent. They're usually pretty eccentric. This guy was a reserve cop. He had a car accident. Bluster. We're not going to throw people in jail for bluster. Right. But I'm sure you'll say the government, in opening and closing, pointed to a lot more than bluster. Specific acts consistent with faking to be an agent, right? Well, I mean, the argument was essentially he made representations when the first time he came in, by showing his ID, he showed a badge, made reference to the employee, I'm going to bring you an FBI lapel pin. The second time he went in, he had an envelope that had FBI stamped all over it and it had his name on it. And the third envelope was in evidence. It had FBI stamps on it. So I guess I can be pushy. What do you tell us the best way to write this decision is for you to win? Is it yes, error, but harmless? Or no, this is exactly the instruction, should be in the Fifth Circuit pattern? Or nadir, we don't need to reach any of that because their instruction was wrong. Stop. Well, I think their instruction was wrong because . . . What's the way you would write this opinion? I would write the opinion to say that the instruction that they requested was not the correct instruction. They didn't propose the correct instruction. The instruction given by the district court, while not perfect, was adequate under these circumstances to convey what the jury had defined, the three elements of the offense, and that while acting in the defendant committed any act, was sufficient to communicate to this jury on this record what the second element was. That's where I have a little difficulty because I don't really want precedent to exist that any act as such, because that does sound like you could get someone who walks around boasting. I understand. And that's why I say I think it was adequate in this particular case. I don't think that that was the best for a pattern instruction. But the elements were presented to the jury in the instruction, and as I say, the arguments make clear what Mr. Ferris, his lawyer, was arguing about was basically he didn't commit acts where he said, I'm an FBI agent, give it to me. No, and that wasn't the instruction. And that would be asserted authority acts. That would be asserted authority. I don't think that this court has gone there. A couple of courts have recognized it. I don't think that's what Cohen does. That's not what it says. And I don't think that the factual circumstances are what are – I guess the bottom line is, yeah, it was harmless. It didn't affect the outcome in this particular case. To go to the sentencing issue. Do you want to just concede that? They don't authorize me. I mean, so Assistant U.S. Attorney Gloff walks in. He's replacing Frazier, right? Yes. And then the court says, what are we going to do about this? And he says, well, I'll just pinch him. Seems commonsensical to me. Well, what they're working from is the probation officer. I know, but he gives no coherent argument for how the pharmacists are traffickers. The best argument that I come up with is that what he was doing, at least with respect to the last two prescriptions, and those two prescriptions were predated, presigned. So they're not valid prescriptions. They were not going to be filled in the course of professional practice. They were dated a couple of days after the third time Mr. Ferris was in there filling them. So technically those prescriptions were not proper prescriptions. And so the theory that gets us there is what Mr. Ferris was doing – I think he was trying to accumulate this stuff because he wanted to make sure he had enough pain medication on hand. His lawyer basically said – For himself. For himself. Isn't that the end of the story then? Why is that the end of the story? Well, because you have a single case ever, ever, where the government convicts a pharmacist under 841 because they over-prescribed. We aren't saying that the pharmacist committed the violation. But you have to be saying the pharmacist was the trafficker, right? No. I was saying that Mr. Ferris was causing the pharmacist not to properly prescribe or to issue the medication. So who's the drug trafficker that justifies the 841 cross? Who is it? Ferris. Okay. But was that a theory that the government ever urged or the PSR said? I think that's what the conversation was with the district court at the sentencing. That's what the understanding was is he came in to cause the pharmacist – I agree that's the best theory. I don't see that in the PSR. Well, the whole theory at trial was he was going through this ruse as an FBI agent because he didn't want them to scrutinize these things closely because he was getting them more often than was appropriate. How would that relate to trafficking though? I mean given that the prescriptions were valid in the sense that they came from a bona fide physician in New York, the pharmacy verified that, et cetera, et cetera. So I mean how does the trafficking advance if he's accumulating them for himself? I just don't follow the trafficking. Well, because by the time you get to the last two prescriptions, those are predated, presigned. Those are inappropriate. Okay, so even if they're invalid though, I mean how does that make it trafficking? Well, that makes it unlawful dispensing to dispense under those prescriptions. And the theory is that Mr. Farris was in part acting as an FBI agent so that the pharmacist would go, okay, well there's no problem here, I'll just fill these. But the pharmacist did indeed look at the last one and said, wait a minute, these are predated. And they kind of got freaked out when Mr. Farris said, oh, and if you ever have any trouble with the pharmacy board, let me know, I'll give them a call. And that's what sort of tipped him off to wait a minute, there's something wrong going on here. I mean I get what you're saying is going wrong. I'm just having trouble putting it in the bucket with trafficking in the sense of the way we typically think about trafficking. I mean we've got this guy, one person, we've got the pharmacy, whatever's going on with him in terms of getting the prescription, et cetera, but trafficking generally denotes promoting something beyond his space, illegal, improper, et cetera. It just seems like a stretch. It's a reach. I don't disagree that it's a reach, but I don't think it's a reach that's beyond the scope of the evidence that was presented both at trial and before. I mean it's punitive. Why should we be stretching to get to a theoretical point? It either is there or it's not. Whatever else he did, he did. But I mean it's punitive. So I don't think we're stretching something just because, got you. Judge, I'm telling you a basis for how it could be affirmed. I got you. That's your job. That's what I'm telling you. I'm still trying to see how we get into, we've got a race and over issue, and then on the sentencing it just seems a real stretch. So said differently, what's your best case that harmonizes the argument you're making? I don't find any case on this. This is an unusual theory. I will say that legally it can be articulated that that's what the basis for the sentence was. It just seems to me the shortest distance between two points is a straight line to say it's novel. However, the government has no authority case-wise or otherwise to support the stretch. Thus, it's reversible error. Well, there may not be case-wise, but I think lawfully, I mean I think there is a legal basis for it. The legal basis is that dispensing is distributing the drug with a legitimate medical purpose or without a legitimate medical purpose or not in the course of professional practice. And I understand not in the course of professional practice based on the Otey case of this court and based on Armstrong too that a prescription that is pre-signed, that is predated, pre-signed is not properly issued in the ordinary course of professional practice so that those two prescriptions that he was attempting to get the pharmacist to fill, he was attempting to cause the pharmacist to dispense that medication other than in the course of a professional practice. So that is what the BSR said and that is what your brief just looking at it said. Yes. He made the pharmacist. Yes. It's a section. It's a 2B. It's a causation. Okay. So it is not the theory of the cross-reference is not that he got so much he could then go and sell them. The theory you've argued from start to finish is that the trafficker was the pharmacist that was misled into falsely distributing. I guess I don't think of the pharmacist though as doing something unlawful. I think of the pharmacist as being caused to commit an offense. So it's a section 2, aiding and abetting? Yes. But did you reply to their 28-J letter that said that the pharmacist has to have the state of mind? No. I think that for causation, I think that Mr. Ferris has to have the state of mind. Okay. But did you reply to their 28-J? I did not, Joe. Okay. So what's your response now? My response is that Juan looks at the intent of the prescriber, but we're not saying that the prescriber or the issuer is the one who's committing the offense. We're saying that Mr. Ferris caused him to do the acts that resulted in the commission of the offense. And again, that gets me back to what case ever anywhere do you have an 841 trafficking as to a pharmacist that had no idea that this was illegal? They did it innocent. I don't have a case that says that. You need that case, don't you, to allow the cross-reference? I think that's what the notion of the section 2 of causation is. Okay. What's your best case under section 2 even? I don't have one. You don't have one? I just don't have one on my fingertips. I don't know. I know, but it's sort of important. That's the theory. It wasn't endorsed by Gloff that I could see. I don't know that they got that deeply into it. I mean, I look at the exchange between them, and Gloff started and the judge interjected and Gloff finished, but the theory was that he was inducing or whatever it was, the pharmacist to issue these. He wasn't trying to get the pharmacist to have the mental state. He was trying to have the pharmacist not have the mental state. Do you agree that this specific issue is the legal correctness of the cross-reference? I don't think there are facts in dispute. Yes. Okay. I think it's a legal question. Yes. And it's consequential. This couldn't be harmless. As far as the sentencing? Yeah. There is nothing that I can tell you that's in the record that shows that Judge Albright would have issued – done the same sentence for the same reason. I don't know what the reason was for him reducing it from 16 to 12. That's where the proceeding was over. I think that sort of – I'm guessing that that is part of what Judge Stewart's concern was. I'm guessing that the judge was recognizing that 16 was over punitive, but I don't know what that conversation was. I don't remember because it wasn't an issue of the case. Did he keep out the evidence of the car crash and this attorney who turned into a reserve cop sort of having a terrible head injury and therefore he actually needed this stuff? As I recall, that wasn't so much offered, but there was a question that was about the diagnosis. And I think it was blurted out and it was the subject of a motion in limine. Judge Albright got upset with counsel and said, what's the point of a motion in limine if you're just going to barrel through it? And then the judge said, look, the validity of these prescriptions is not an issue for purposes of this trial for the question of whether or not he was impersonating an FBI agent. If he was doing it for an illegitimate purpose, well, that might have been relevant, but that wasn't our position. I don't believe it. I don't think that was our position. Excellent. Thank you. Any questions? Any further questions? Thank you. All right. Thank you, Mr. Kirby. All right. Back to you, Mr. Smoak. The government's position seems to be that the charge adequately conveyed the element of false impersonation and it also had the element of intent to induce somebody to do something else. But that's not enough. I mean, that's the Bass case that I mentioned earlier. Mere impersonation with an illegal intent is not enough for the statute. There also has to be acting in conformity. So, as I mentioned earlier, as an example of an instruction that would be proper, I was mistaken. It was the Tenth Circuit, not the Seventh Circuit. And the case I'm talking about here is U.S. v. Neidlinger, which is 354 Federal Appendix 357. And there, it was a challenge to the adequacy of the instruction on this element. There, the trial court instructed the jury that it must find the defendant committed any act in the assumed role, which would be a correct description of the element, rather than while acting, did any act, because it links the act to the pretending. And also, in Neidlinger, actually, there the defendant was arguing that he had to pretend to do an official act. He was impersonating a U.S. marshal. And the court rejected that, saying that this instruction, any act in the assumed role, was a correct one. Unless the court has any questions on the guidelines issue, I'll just rest. Well, you heard his arguments. Okay. He's very honest, honest. I mean, he's not saying it would be harmless, and he is saying it's legal. But his point is that the actions of your client caused the pharmacist to distribute unlawfully. Well, the pharmacist didn't do that, so far as the evidence shows. The only potential issue is with the two post-dated prescriptions. As to whether it was illegal to present those to the pharmacy, I'm not sure that's correct. The main issue with those seemed to be it's not illegal to issue a prescription to be filled in the future. It has to do, the pharmacist testified about this, with the way that it's dated. So the date of the prescription must be the date that the prescription was issued. And if it's to be filled in the future, then it needs to note not to be filled until. Here, the prescriptions were dated with future dates. So I don't know why the prescribing physician did that. The physician's in New York. I don't know if that's a permissible act under New York law. I have no idea. But the point is that there just isn't any evidence that Ferris was attempting to induce the pharmacist to do something. And as Your Honor asked, well, if it's on an aiding and abetting theory, the government would have to show that the pharmacist had the requisite intent to do something outside of the medical practice.  The pharmacist is the one who's responsible for the medical state. He disputes that. Do you have a case? Do you have a case for that proposition? Just general law on aiding and abetting, the principle has to have the requisite intent. And we know from the Supreme Court's decision in Mulan that that intent is to knowingly do something outside of accepted medical practice. And here, again, the pharmacist testified at trial that he ran all the checks that he was supposed to on the prescriptions that were filled, that Ferris had a long history of being prescribed these medications. And the theory that the government and the court apparently accepted that sentencing was that Ferris was basically pill shopping. Yeah. And there's just not any evidence of that. All right, Mr. Spooley. Thank you. Thank you for your briefing and argument. Mr. Durbin? All right, come to the mic so the tape will pick you up. I looked these up. He surrendered on July the 6th to the Bureau of Prisons. Yes, that's correct. And his release date now is May 17 of 23, according to the DOP indicators. All right.  Yeah, all right. Thank you. Thank you, sir. All right. Thanks to both counsel for your briefing and argument in the case. We will submit it. If you find any other case authority that's . . .